IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-110-D(3)

| | |
|---|---|
| SHIRLEY MUNSON,<br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)   **MEMORANDUM &**<br>)   **RECOMMENDATION**<br>)<br>)<br>)<br>) |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings [DE'S 16-17 & 18-19]. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be DENIED, that Defendant's Motion for Judgment on the Pleadings [DE-18] be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff filed an application for DIB and SSI on October 13, 2004, alleging that she

1

has been disabled since December 31, 2002 (Tr. 13). This application was denied initially and upon reconsideration (Tr. 13). A hearing was held before an Administrative Law Judge ("ALJ") on June 7, 2007. Ultimately, the ALJ found that Plaintiff was not disabled in a decision dated September 12, 2007 (Tr. 13-19). The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on February 8, 2008 rendering the ALJ's determination as Defendant's final decision (Tr. 5-7). Plaintiff filed the instant action on March 17, 2008 [DE-6].

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the

2

court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) diabetes

3

mellitus; 2) right leg cramps; 3) arthritis of the left shoulder; 4) chest pain; and 5) depression (Tr. 15). In completing step three, however, the ALJ determined that Plaintiff did not have an impairment or combination or impairments which met or medically equaled one of the impairments listed in [20 CFR Part 404](), Subpart P, Appendix 1 (Tr. 16). The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work (Tr. 16). Based on this finding, at step four the ALJ determined that Plaintiff was able to perform her past relevant work as a gift wrapper and a chauffeur (Tr. 18). Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision (Tr. 18). The medical record contains substantial evidence supporting each of the ALJ's determinations. A summary of this evidence now follows.

On September 20, 2003 Plaintiff was admitted to Raleigh Community Hospital with "severe anemia with several months' worth of 'dizziness'" (Tr. 104). She was transfused with three units of packed red blood cells (Tr. 104). In addition, Plaintiff underwent a pelvic ultrasound and a brain CT (Tr. 104). Ultimately, Plaintiff was diagnosed with: 1) severe iron deficiency anemia secondary to menorrhagia; 2) uterine fibroids; and 3) trichomonas (Tr. 104). Plaintiff was instructed to have her sexual partner checked and/or treated for trichomonas (Tr. 104). She was also instructed to follow up with her personal physician in four to six weeks (Tr. 105). Her condition at time of discharge was described as "fair and improved" (Tr. 105).

Plaintiff underwent a endometrial pipelle biopsy on September 25, 2003 (Tr. 124-125). The final cytologic diagnosis was negative for intraepithelial lesion or malignancy (Tr.

125).

In a request for evaluation of medical severity dated January 12, 2005 Dr. Robert A. Johnson indicates that Plaintiff does not have any impairments, either individually or in combination, which resulted in significant restriction of her RFC (Tr. 126). This evaluation was affirmed by Dr. Eleanor Cruise on June 22, 2005 (Tr. 155).

Dr. Gonzalo A. Fernandez examined Plaintiff on February 10, 2005 (Tr. 141-144). Plaintiff's chief complaints were anemia, uterine fibroids and memory loss (Tr. 141). During this examination, Plaintiff related that she could still perform various household chores for approximately 15 minutes before she has to stop and rest (Tr. 142). She also indicated that she could: 1) walk 40 to 50 feet before having to stop; 2) stand 10 to 15 minutes; 3) pick up 15 pounds; and 4) drive occasionally (Tr. 142). Upon examination, Plaintiff appeared well-nourished and well-developed and was able to get on and off the examination table (Tr. 142). Plaintiff sat comfortably (Tr. 142). Dr. Fernandez noted that Plaintiff was 61 inches tall and weighed 158 pounds (Tr. 143). However, she required a stool to get on the exam table (Tr. 142). Plaintiff was able to go from the supine to sitting position by herself and was able to recall both past and present events during her conversation (Tr. 142). Likewise, Plaintiff was alert, oriented times four, and in no acute distress (Tr. 142). Her motor strength was essentially 5/5 in her upper and lower extremities, and she demonstrated a full range of motion (Tr. 143). Likewise, Plaintiff had no muscle spasms or other tenderness of her lower back (Tr. 143). Testing revealed that Plaintiff's glucose level was 249 mg/dL (Tr. 145). Dr. Fernandez opined that Plaintiff should be able to: 1) stand and walk two to four hours with

frequent breaks; 2) sit four hours with occasional to frequent breaks; and 3) carry 10 to 15 pounds occasionally and frequently. (Tr. 143). Furthermore, he indicated that Plaintiff would not require an assistive device to ambulate (Tr. 143). Although Dr. Fernandez noted some postural limitations, he added that these were "just dictated by her complaints of generalized weakness" (Tr. 143).

The ALJ made the following findings with regard to Dr. Fernandez's opinions:

> . . . Dr. Fernandez reported that the claimant should be able to sit 4 hours with occasional to frequent breaks and walk or stand for 2-4 hours in an 8-hour workday with frequent breaks, and that she could frequently lift and carry 10-15 pounds. However, Dr. Fernandez's conclusions are not supported by his own objective findings on exam and appear to merely reflect what the claimant told him. For example, he restricted her to sitting 4 hours a day with frequent breaks but reported no findings of problems with her back, neck or shoulders that might affect this activity. Although she had knee crepitus, he specifically attributed limitations on her abilities to bend, stoop and crouch to her **complaints** of generalized weakness. He indicated that she could only lift and carry 10-15 pounds occasionally but noted she had full 5/5 motor strength of her upper and lower extremities. He reported that she might have some limitations related to memory loss, but he also found her memory was grossly intact on exam and that she was able to recall past and present events.
> (Tr. 18)(emphasis in original).

Plaintiff's RFC was assessed on March 11, 2005 (Tr. 146-153). It was determined that Plaintiff was capable of: 1) occasionally lifting and/or carrying 50 pounds; 2) frequently lifting and/or carrying 25 pounds; 3) standing and/or walking (with normal breaks) for a total of about six hours in an eight hour workday; 4) sitting (with normal breaks) for a total of about six hours in an eight hour workday; and 5) pushing and/or pulling with no limitations other than those already noted for lifting and/or carrying (Tr. 147). No postural,

6

manipulative, visual, communicative, or environmental limitations were noted (Tr. 148-150). This RFC finding was affirmed by another physician on June 21, 2005 (Tr. 154).

Dr. Marjorie Debnam also treated Plaintiff (Tr. 163-196). Examination notes indicate that Plaintiff returned to the clinic on April 5, 2005 after a two year hiatus (Tr. 183). During this hiatus she was not regularly checking her blood sugar and had run out of all of her prescribed medications (Tr. 183). Likewise, Plaintiff had not been rationing salty foods (Tr. 183). It was noted that Plaintiff weighed 230 pounds and was overweight (Tr. 183). Plaintiff's blood sugar was uncontrolled at 350 mg/dL during this examination (Tr. 183). Dr. Debnam instructed Plaintiff to resume the use of her insulin (Tr. 184). When she returned on April 11, 2005, Plaintiff's blood sugar had lowered to 150 mg/dL (Tr. 181). However, Plaintiff was now apparently non-compliant with her blood pressure medication (Tr. 182). Plaintiff was urged to take her medications as directed (Tr. 182). On April 25, 2005, her blood sugar elevated to 372 mg/dL because she forgot to take her insulin (Tr. 179). When asked by Dr. Debnam why Plaintiff had failed to obtain certain "labs" as instructed, Plaintiff responded that she was "busy working" (Tr. 179). No mention is made of any financial hardship, and Plaintiff informed Dr. Debnam that she would "get the labs" (Tr. 179). After improved compliance with her medications, Plaintiff's blood sugar decreased to 250 mg/dL on May 16, 2005 (Tr. 177). On January 17, 2006, Plaintiff's blood sugar was 213 mg/dL (Tr. 171). On June 29, 2006, Plaintiff returned after another hiatus (Tr. 169). She was again asked to provide the requested "labs" (Tr. 170). During a February 8, 2007 examination Plaintiff's blood sugar was 300 mg/dL, and the importance of compliance with

7

her medications was again stressed to Plaintiff (Tr. 167-168). Indeed, Dr. Debnam's records indicates that Plaintiff had to be repeatedly reminded of the importance of compliance with her medications (Tr. 163-183). Plaintiff's blood sugar was 220 mg/dL on February 15, 2007 (Tr. 165). When she was evaluated on April 27, 2007, Plaintiff stated that she "feels much better" (Tr. 163). Her blood pressure was stable and her blood sugar was 201 mg/dL (Tr. 163). From April 5, 2005 to April 27, 2007, Plaintiff's weight ranged between 230 and 240 pounds (Tr. 163-183).

X-rays of Plaintiff's chest taken on December 19, 2005 indicated only mild cardiomegaly with no acute lung findings (Tr. 159). No infiltrate, edema, or active pleural abnormality was noted (Tr. 159). On July 26, 2006, Plaintiff underwent a standard noncontrast head CT (Tr. 158). Plaintiff's ventricles and sulci were normal in size and configuration without mass effect or midline shift (Tr. 158). No focal parenchymal abnormalities or areas of acute intracranial hemorrhage were identified (Tr. 158). There were no abnormal extra-axial fluid collections (Tr. 158). The visualized bony anatomy was normal, and the orbits were seen as normal (Tr. 158). Cartoid color imaging taken on August 8, 2006 showed only mild left ICA stenosis (Tr. 160).

On August 2, 2007, Plaintiff underwent a comprehensive psychiatric evaluation conducted by Dr. Maged H. Saad (Tr. 197-202). Plaintiff stated that she stays depressed all the time (Tr. 200). However, she denied going to a mental health center and she had no history of psychiatric treatments or hospitalizations (Tr. 200). She stated that she was an average student before she quit school in the eighth grade (Tr. 200). Dr. Saad noted that

8

Plaintiff was only a "little bit overweight." (Tr. 201). Nonetheless, he also noted that Plaintiff had "had difficulty standing or sitting probably due to her weight." (Tr. 201). Plaintiff: 1) did not exhibit any bizarre behaviors or mannerisms; 2) had a normal rate and volume of speech, and her speech was clear, informative and relevant; 3) displayed emotions which showed normal reactive mood; 4) did not demonstrate any evidence of severe major depression or any inappropriate mood swings; 5) was alert; 6) was oriented to time, place and person; 7) had an appropriate attention span; 8) had grossly intact memory; and 9) had an intact ability to think abstractly (Tr. 201). Her thoughts showed normal flow of associations and normal content with no hallucinations or delusions (Tr. 201). Ultimately, it was determined that Plaintiff was functioning at the low range of intellectual abilities (Tr. 201). Specifically, Plaintiff had no limitations with regard to: 1) understanding and remembering simple instructions; and 2) her ability to carry out simple instructions (Tr. 197). In addition, Plaintiff was assessed as having only mild limitations with regard to: 1) the ability to make judgments on simple work-related decisions; and 2) interacting appropriately with the public, supervisors and co-workers (Tr. 197-198). However, Plaintiff was deemed to have moderate limitations with regard to responding appropriately to usual work situations and to changes in a routine work setting (Tr. 198). Finally, Plaintiff had marked limitations with regard to: 1) understanding and remembering complex instructions; 2) carrying out complex instructions; and 3) the ability to make judgments on complex work-related decisions (Tr. 197). After weighing these various limitations, Dr. Saad opined that Plaintiff was capable of managing her money as well as any other benefits she may receive (Tr. 201).

9

With regard to Dr. Saad's conclusions, the ALJ made the following findings:

> In August 2007, Dr. Saad completed a medical source statement indicating there were marked limitations of the claimant's ability to understand, remember and carry out complex instructions, ostensibly due to his estimate that she was functioning in the low range of intellectual abilities, but there is no IQ testing to demonstrate such impairment and he indicated her memory was intact. He reported she had moderate limitations in responding appropriately to changes in a routine work setting, but acknowledged there was no evidence of any severe depression or anxiety that might affect that occupational function. He indicated there were no limitations in her ability to understand, remember and carry out simple instructions and that her ability to interact with co-workers, supervisors and the public was only mildly limited.
> (Tr. 18).

Notably, Plaintiff concedes that "Dr. Sadd's report indicates memory impairment, although either his report or its transcription are faulty . . ." [DE-17, pg. 14].

Plaintiff testified during the hearing in this matter. She stated that she dropped out of school before completing the 8th grade (Tr. 211). After describing her previous work, Plaintiff indicated that her worst health problem was her diabetes (Tr. 214). However, Plaintiff denied that her primary physician recommended a diabetes specialist (Tr. 215). According to Plaintiff, there are times when she is not steady on her feet (Tr. 216). Plaintiff stated that she suffered from depression, had crying spells, and had difficulty sleeping (Tr. 217). In addition, Plaintiff indicated that she had problems with her memory (Tr. 218). She asserted that these memory problems made it difficult for her to take care of herself (Tr. 218). Despite this alleged difficulty in caring for herself, Plaintiff still lives alone (Tr. 221). Likewise, she stated that she received assistance with her everyday household activities only "sometimes" (Tr. 221). Plaintiff also testified that she occasionally suffered from shortness

10

of breath (Tr. 219). However, she added that medication was effective in treating this condition (Tr. 219).

The ALJ made the following findings with regard to Plaintiff's credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
> It was noted on several occasions in the record that the claimant was off her medications. Dr. Fernandez reported in February 2005 that the only medicine she was taking was over-the-counter iron supplements and multi-vitamins. At the time, she admitted that her regular activities included cooking, washing dishes, making her bed, doing laundry, and vacuuming, and that she could do those for approximately 15 minutes before having to stop . . . Dr. Debnam noted a couple of times in April 2005 that the claimant did not go for the lab work he requested . . . In August 2007, the claimant told Dr. Saad that her activities included doing housework, going shopping, visiting her children and friends, and doing puzzles. The claimant's limited compliance with recommended tests and treatment and her activities, in particular, are not consistent with her allegations of debilitating symptoms . . .
> (Tr. 17-18 internal citations omitted).

Based on this evidence, the ALJ made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . .
>
> although the claimant's blood sugar is often poorly controlled, she does not have any significant diabetic neuropathy, nephropathy, retinopathy, or other end-organ damage secondary to that condition. She has complained of chest pain and has hypertension with a mild cardiomegaly and ICA stenosis, but there is no evidence of any further cardiac disease or associated problems such as peripheral edema. Despite complaints of left shoulder pain, Dr. Fernandez reported that she had full motion and strength of both upper extremities with good grip strength, normal reflexes, and no neurological deficits. She also

11

> exhibited full motion and strength of her neck, back, and lower extremities, including her legs despite some mild crepitus of her knees. The undersigned concludes from this evidence that the claimant is able to sit, walk or stand for up to 6 hours in an 8-hour workday and lift or carry at least 10 pounds frequently and 20 pounds occasionally, as required for light exertion . . . .
>
> Despite her complaints of memory problems, no memory impairment was evident during evaluations by Dr. Fernandez and Dr. Saad. Her affective disorder appears very mild and episodic with no more than mild restriction of her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation of extended duration. The undersigned concludes from this evidence that the effects of the claimant's depression do not significantly limit her ability to perform a full range of light work on a regular and sustained basis . . .
> (Tr. 16-17).

A VE also testified during the hearing in this matter (Tr. 226-229). He described Plaintiff's past work activity could be classified as a gift wrapper and a chauffeur (Tr. 227, 234). Furthermore, he stated that these jobs were semi-skilled in nature and required light exertion (Tr. 227). Based on this testimony, the ALJ made the following finding:

> Considering the claimant's residual functional capacity as described above along with the physical and mental demands of her past relevant work, the undersigned finds that the claimant is able to perform these jobs as they are generally performed in the economy . . .
>  . . . .The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2002 through the date of this decision . . .
> (Tr.18).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the

12

factual basis for his resolutions of conflicts in the evidence. Although Plaintiff lists several assignments of error, these assignments essentially contend that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her assignments of error are meritless. Nonetheless, the undersigned shall address Plaintiff's individual assignments of error.

### The ALJ properly assessed Plaintiff's RFC

Plaintiff argues that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process. The argument supporting this assignment of error consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. Plaintiff asks this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of Defendant's. The undersigned declines to do so.

The medical record relied upon by the ALJ has already been summarized. This medical record contained substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC. Because there is substantial evidence in the

13

record to support the ALJ's RFC determination, this assignment of error is without merit.

**The ALJ gave valid reasons for rejecting medical opinions**

Plaintiff also contends that the ALJ inappropriately disregarded portions of the opinions of Dr. Fernandez and Dr. Saad. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id.* (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or

14

has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

In his decision, the ALJ fully explained his reasoning in weighing Dr. Fernandez's and Dr. Saad's opinions. These reasons were supported by substantial evidence and, therefore, this assignment of error is also meritless.

**The ALJ properly addressed Plaintiff's alleged obesity**

Plaintiff alleges that the ALJ failed to consider that fact that Plaintiff is obese. The undersigned disagrees. Here, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal the level of severity described for any listed impairment (Tr. 16). The ALJ stated that this determination was reached by considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 17). Plaintiff's obesity was specifically mentioned by the ALJ (Tr. 16). Accordingly, this assignment of error is also meritless.

**The ALJ's reference to Dr. Kenyon Railey is harmless**

The ALJ refers to the report of a Dr. Kenyon Railey (Tr. 16). This report, however, does not appear in the record. Regardless, the incorrect reference summarizes evidence which–if it actually existed in the record–would have supported Plaintiff's claim of disability. Thus, Plaintiff has failed to demonstrate that the ALJ's error has caused any harm. A mistake by an administrative decision maker is of no legal significance if it would have no bearing on the substance of the decision reached. Ngarurih v. Ashcroft, 371 F.3d 182, 191 n. 8 (4th Cir. 2004). Therefore, this assignment of error is also meritless.

15

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support his assessment. Accordingly, this assignment of error is meritless.

**Conclusion**

For the aforementioned reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be DENIED, that Defendant's Motion for Judgment on the Pleadings [DE-18] be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 8th day of October, 2008.

_____
William A. Webb
U.S. Magistrate Judge