IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-110-D(3)

| | |
|---|---|
| SHIRLEY J. MUNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff seeks review of Magistrate Judge Webb's Memorandum and Recommendation ("M&R"). In the M&R, Judge Webb concluded that the Commissioner had properly denied plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). Accordingly, the M&R recommended that plaintiff's motion for judgment on the pleadings be denied [D.E. 16], that defendant's motion for judgment on the pleadings be granted [D.E. 18], and that defendant's final decision denying the request for benefits be affirmed. On October 12, 2008, plaintiff filed objections to the M&R [D.E. 25]. As explained below, the court overrules plaintiff's objections to the M&R and affirms the Commissioner's final decision.

I.

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quotation omitted, emphasis removed, and alteration in original). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that

there is no clear error on the face of the record in order to accept the recommendation." Id. (quotation omitted).

The court has reviewed the M&R, the record, and plaintiff's objections to the M&R. As for those portions of the M&R to which plaintiff made no objection, the court is satisfied that there is no clear error on the face of the record. As for plaintiff's objections, the court has conducted a de novo review of the objections and the entire record. In doing so, the court has applied the standard that Judge Webb described in the M&R. See M&R 2–3. Specifically, the court "must uphold the factual findings of the [administrative law judge ("ALJ")] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C.A. § 405(g) (West Supp. 2007). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Under the substantial evidence standard, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589.

II.

On June 7, 2007, the ALJ held a hearing regarding plaintiff's application for benefits. See R. at 209-35. The ALJ uses a five-step process in evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4). Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See M&R 3; R. at 14-15. The claimant bears the burden of proof at steps one through four, but the burden shifts to the

2

Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

On September 13, 2007, the ALJ denied claimant's application for benefits. R. at 13-19. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. Id. at 15. At step two, the ALJ determined that plaintiff had the severe impairments of diabetes mellitus, right leg cramps, arthritis of the left shoulder, chest pain, and depression. Id. At step three, the ALJ found that plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the criteria of a listed impairment under 20 C.F.R. § 404, Subpart P, App. 1. Id. at 16. At step four, the ALJ evaluated plaintiff's testimony and the medical evidence and determined that plaintiff possessed the RFC to perform a full range of light work. Id. at 16-17. Based on plaintiff's RFC, the ALJ found that plaintiff could perform past relevant work as a gift wrapper and chauffeur. Id. at 18. Accordingly, the ALJ concluded that plaintiff was not disabled for the period from December 31, 2002, to September 12, 2007. See id.

On February 8, 2008, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. See R. at 5-7. Plaintiff filed this action, and the parties filed cross-motions for judgment on the pleadings. Thereafter, Judge Webb issued an M&R rejecting plaintiff's arguments.

III.

Plaintiff first objects that the ALJ, in determining plaintiff's RFC, improperly considered the reports of Dr. Fernandez and Dr. Saad (consulting physicians) by ignoring certain evidence therein, failing to resolve inconsistencies, and improperly rejecting the doctors' medical opinions. See Objs. to M&R 8-14.

This court focuses on whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard. See Craig, 76 F.3d at 589. An

3

ALJ is not required to comment on every piece of evidence in the record. See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); Anderson v. Bowen, 868 F.2d 921, 924 (7th Cir. 1989). When conflicting evidence is presented, it is the province of the ALJ, and not this court, to resolve those inconsistencies. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

An ALJ's assessment of a physician's opinion (whether treating or consulting) will generally not be disturbed "absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (per curiam) (unpublished) (quotation omitted). The opinion of a treating physician on the nature and severity of impairments is to be accorded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2); Craig, 76 F.3d at 590; see also Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Plaintiff asserts that Dr. Fernandez and Dr. Saad are "Defendant's two consulting physicians who examined" her. See Objs. to M&R 8. Plaintiff does not, however, contend that they were treating physicians. Thus, the physicians' opinions are not due controlling weight. See 20 C.F.R. § 404.1527(d)(2).

The regulations prescribe factors for an ALJ to consider in determining the weight to ascribe to a physician's opinion, including the length and nature of the physician-patient relationship, the supportability of the opinions, and their consistency with the record. See 20 C.F.R. §§ 404.1527(d)(2)–(6). Contrary to plaintiff's contention, see Objs. to M&R 12, 14, the ALJ need

4

"not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions," as long as good reasons are provided for the assigned weight. See, e.g., Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

As to Dr. Fernandez's report, the ALJ thoroughly considered its contents in making the RFC determination. See R. at 16-18. The ALJ noted and accounted for the report's discussion of plaintiff's various pains, motor strength in extremities, memory-related issues, appearance, and Dr. Fernandez's opinion as to what sort of activities plaintiff could perform. See id. The ALJ also properly articulated reasons for rejecting some of Dr. Fernandez's conclusions. The ALJ stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and other applicable regulations and rulings. See R. at 18. The ALJ also made the following observations:

> Dr. Fernandez reported that the claimant should be able to sit 4 hours with occasional to frequent breaks and walk or stand for 2-4 hours in an 8-hour workday with frequent breaks, and that she could frequently lift and carry 10-15 pounds. However, Dr. Fernandez's conclusions are not supported by his own objective findings on exam and appear to merely reflect what the claimant told him. For example, he restricted her to sitting 4 hours a day with frequent breaks but reported no findings of problems with her back, neck or shoulders that might affect this activity. Although she had knee crepitus, he specifically attributed limitations on her abilities to bend, stoop and crouch to her complaints of generalized weakness. He indicated that she could only lift and carry 10-15 pounds occasionally but noted she had full 5/5 motor strength of her upper and lower extremities. He reported that she might have some limitations related to memory loss, but he also found her memory was grossly intact on exam and that she was able to recall past and present events [].

R. at 18 (emphasis added). Given the lack of support for Dr. Fernandez's conclusions, as evidenced by the ALJ's discussion and other evidence in the record, substantial evidence existed for the ALJ's decision to reject Dr. Fernandez's opinion that plaintiff could sit "4 hours with occasional to frequent breaks and walk or stand for 2-4 hours in an 8-hour workday with frequent breaks, and that she could frequently lift and carry 10-15 pounds." See R. at 18; Craig, 76 F.3d at 589.

5

The ALJ also thoroughly analyzed Dr. Saad's report as to plaintiff's mental and psychological conditions in making the RFC determination. See R. at 17-18. As to the weight assigned the report, the ALJ considered the Dr. Saad's opinions pursuant to the requirements of 20 C.F.R. § 404.1527 and other applicable law. See R. at 18. In determining the weight to give to the report, the ALJ observed:

> Dr. Saad's diagnosis of depression appears based almost entirely on the claimant's subjective complaints in the absence of significant findings on examination or any professional mental health treatment . . . .
>
> Dr. Saad completed a medical source statement indicating there was marked limitations of the claimant's ability to understand, remember, and carry out complex instructions, ostensibly due to his estimate that she was functioning in the low range of intellectual abilities, but there is no IQ testing to demonstrate such impairment and he indicated her memory was intact. He reported she had moderate limitations in responding appropriately to changes in a routine work setting, but acknowledged there was no evidence of any severe depression or anxiety that might affect that occupational function. He indicated that there were no limitations in her ability to understand, remember and carry out simple instructions and that her ability to interact with co-workers, supervisors and the public was only mildly limited [].

R. at 17-18. The ALJ applied the proper legal standard, and substantial evidence exists for the weight given to Dr. Saad's medical opinions. See Craig, 76 F.3d at 589.

Substantial evidence also supports the ALJ's RFC determination. In making the RFC determination, the ALJ meticulously detailed plaintiff's medical history, noting she has diabetes, was hospitalized for severe iron deficiency, has suffered chest pains, has mild crepitus of her knees, is obese, has hypertension (which is treated with medication), can recall past and present events, has full motion and strength of her neck, back, and lower extremities with good grip strength, normal reflexes, and no neurological deficits. See R. at 16-17. The ALJ explicitly discussed the reports of Dr. Fernandez, Dr. Saad, and Dr. Debnam.[1] See R. at 16-18. After analyzing the evidence, the

---

[1] Plaintiff objects to the reference in the RFC determination to a non-existent report by Dr. Kenyon Railey "that the claimant had depression with anxiety, irrational fears, racing thoughts,

ALJ concluded that plaintiff "is able to sit, walk or stand for up to 6 hours in an 8-hour workday and lift or carry at least 10 pounds frequently and 20 pounds occasionally" as required to perform light work. See R. at 17. The ALJ's RFC determination is supported by substantial evidence. See Craig, 76 F.3d at 589.[2]

IV.

Next, plaintiff objects that the ALJ erroneously failed to consider the effect of plaintiff's obesity on her RFC. See Objs. to M&R 15. Plaintiff contends that the ALJ ignored an observation in Dr. Saad's report that plaintiff "had difficulty sitting and standing due to obesity." See id. Plaintiff further contends that the ALJ failed to resolve the inconsistencies in the record dealing with her weight, which was reported to be 158 pounds in February of 2005 and 230 pounds in April 2005.

---

difficulty sleeping, and fear of leaving the house." See R. at 16-17; Objs. to M&R 16. The ALJ's error (which appears to be a transcription error) could only have helped plaintiff with respect to the ultimate issue in the case. Accordingly, the error was harmless. See, e.g., Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004).

[2] The RFC determination is also consistent with the reports of Dr. Robert A. Johnson and Dr. Eleanor Cruise who on January 14, 2005, and June 22, 2005, respectively, found that plaintiff's impairments, neither individually nor in combination, result in significant restriction of functional capacity. See R. at 126-27, 155.

Plaintiff, nevertheless, objects that the ALJ made inconsistent findings of the effect of her depression on her RFC by concluding that the depression was both "severe and "not severe." See Objs. to M&R 14-15. This objection fails. The ALJ did find plaintiff's depression to be a severe impairment, see R. at 15, and a severe impairment under the regulations is one which "significantly limit[s] [claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1521(a). However, rather than contradict this finding, the ALJ, in the RFC determination, concluded that plaintiff's depression does "not significantly limit her ability to perform a full range of light work on a regular and sustained basis." R. at 17. Plaintiff implicitly contends that severe impairment necessarily precludes performance of light work. Plaintiff is mistaken. Cf. Johnson v. Barnhart, 434 F.3d 650, 654, 659 (4th Cir. 2005) (per curiam) (affirming ALJ's decision, as supported by substantial evidence, that claimant could perform significant range of light work despite severe impairments). Further, plaintiff's analysis of the outcome under a different RFC determination is moot because the court finds the ALJ properly determined the RFC. See Objs. to M&R 16-18.

7

See id.

The ALJ accounted for plaintiff's weight, noting that she was obese "with weights of 230-240 pounds," as reported by Dr. Debnam. See R. at 16. As for the ALJ's apparent failure to discuss the 158 pound figure, the error was harmless given that the ALJ considered her highest reported weight during the relevant period. See Ngarurih, 371 F.3d at 190 n.8. Further, an ALJ is not required to comment on every piece of evidence in the record. See, e.g., Dyer, 395 F.3d at 1211; Anderson, 868 F.2d at 924. Taking into account her obesity and other evidence, the ALJ concluded that plaintiff could perform light work. See R. at 16-17. This determination was based on substantial evidence, and the ALJ properly accounted for plaintiff's obesity in the RFC determination. See Craig, 76 F.3d at 589.

V.

Finally, plaintiff objects to the ALJ's evaluation of plaintiff's credibility in making the RFC determination. See Objs. to M&R 19-24. Specifically, plaintiff argues that the ALJ did not properly evaluate her daily activities as compared to her alleged debilitating symptoms. See id. at 20-21. Plaintiff also argues that the ALJ improperly evaluated her limited compliance with prescribed medical treatment. See id. at 21-23.[3]

When an ALJ makes a credibility determination, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2,

---

[3] Plaintiff also asserts that the ALJ's "decision [] lacks an evaluation of other evidence" under the factors prescribed in 20 C.F.R. § 404.1529(c)(3) concerning plaintiff's pain. See Objs. to M&R 23. The court rejects plaintiff's argument. See R. at 16-18.

1996). The court's review is limited to determining whether substantial evidence supports the ALJ's credibility decision. Johnson, 434 F.3d at 658. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

The credibility determination at issue is contained in the following passage from the ALJ's decision:

> The undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> It was noted on several occasions in the record that the claimant was off her medications. Dr. Fernandez reported in February 2005 that the only medicine she was taking was over-the-counter iron supplements and multi-vitamins. At the time, she admitted that her regular activities included cooking, washing dishes, making her bed, doing laundry, and vacuuming, and that she could do those for approximately 15 minutes before having to stop and rest. She indicated that she was able to go shopping, drive a car, pick up 15 pounds, stand for 10-15 minutes at a time, and walk for 40-50 feet before having to stop. Dr. Debnam noted a couple of times in April 2005 that the claimant did not go for the lab work he requested. In August 2007, the claimant told Dr. Saad that her activities included doing housework, going shopping, visiting her children and friends, and doing puzzles. The claimant's limited compliance with recommended tests and treatment and her activities, in particular, are not consistent with her allegations of debilitating symptoms.

R. at 17-18 (citations omitted).

First, plaintiff contends that her daily activities—housework, shopping, visiting others, doing puzzles—do not conflict with her allegations of debilitating symptoms. See Objs. to M&R 20-21. Essentially, plaintiff argues that she cannot perform light work, and that her daily activities, rather than contradicting, affirm that allegation. See id.

Plaintiff alleged total disability at the administrative hearing. See R. at 233 ("[O]ur

9

contention is she can't do sedentary work."). In her brief, plaintiff also asserts that "[i]f [her] testimony about her pain and other subjective limitations had been accepted, the ALJ would have to find that she was incapable of working." Objs. to M&R 20. The ALJ found these allegations to be inconsistent with the record, including plaintiff's daily activities. See R. at 17-18. Partly on this basis, the ALJ found plaintiff's allegations of debilitating symptoms not entirely credible. See id. The ALJ permissibly found that plaintiff's daily activities undermine allegations of debilitating symptoms and undermine plaintiff's credibility. See, e.g., Chavis v. Apfel, No. 98-1145, 1998 WL 827322, at *4 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished); Brim v. Chater, No. 95-2178, 1996 WL 10288, at *3 (4th Cir. Jan. 9, 1996) (per curiam) (unpublished); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam).

Second, plaintiff contends that the ALJ failed to apply the proper criteria in evaluating her limited compliance with prescribed treatment, and thus, misjudged plaintiff's credibility. See Objs. to M&R 21-23. Plaintiff argues that the ALJ drew improper inferences from plaintiff's limited compliance with prescribed treatment given her financial condition. See id.

Social Security Ruling 96-7p provides:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Thus, where a claimant "testifies at the hearing before the ALJ that she ha[s] very little income and lack[s] the funds to seek medical help or medication for her ailments," and that testimony is consistent with the record, it is error to conclude that her failure to seek treatment undermines the credibility of her allegations of debilitating symptoms. See Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). Where,

10

however, it is "not clear from the record that [claimant] could not afford treatment," failure to seek treatment may undermine credibility. See, e.g., Wooten v. Shalala, No. 92-1636, 1993 WL 269267, at *3-*4 (4th Cir. July 16, 1993) (per curiam) (unpublished).

Here, the ALJ found that plaintiff's "limited compliance with recommended tests and treatments and her activities, in particular, are not consistent with her allegations of debilitating symptoms." R. at 18. The ALJ noted that plaintiff "did not go for lab work requested" by Dr. Debnam "a couple of times." See id. at 17. The ALJ also remarked that "on several occasions in the record [] the claimant was off her medications." See id. In February 2005, for example, the ALJ noted "that the only medicine [plaintiff] was taking was over-the-counter iron supplements and multi-vitamins." See id. Plaintiff testified, on June 7, 2007, to having "financial problems," that her son helps her pay bills, and that she can only "pay [bills] a little bit at a time." See R. at 220-21.

The ALJ could properly draw a negative credibility inference from the combination of plaintiff's activities and plaintiff's limited compliance with prescribed treatment during the relevant time period. See, e.g., Mickles, 29 F.3d at 921; Wooten, 1993 WL 269267, at *3-*4. In sum, substantial evidence supports the ALJ's determination that plaintiff's daily activities and limited compliance with prescribed treatment undermined plaintiff's credibility. See, e.g., Johnson, 434 F.3d at 658.

VI.

Accordingly, plaintiff's objections to the M&R [D.E. 25] are OVERRULED. Further, plaintiff's motion for judgment on the pleadings is DENIED, defendant's motion for judgment on the pleadings is GRANTED, defendant's final decision is AFFIRMED, and this action is DISMISSED.

11

SO ORDERED. This 8 day of December 2008.

JAMES C. DEVER III
United States District Judge

12